Ms. Watson? 17-1469 Dorothy Oczachowski v. Manor Care of Palos Heights Would counsel please approach? And would you state your names for the record and tell us who you represent and how much time you'd like? Yes, I'm Deborah O'Brien Daly. I'm from the law firm of Lois and Gellin, and I represent the defendant, Manor Care, and And how much time would you like for your argument? I'd like 15 minutes, Your Honor. Okay. A few minutes for rebuttal? Yes, three or four. Okay. Good morning, Ms. Pano. My name is Michael Silverman. I represent the Oczachowski family, plaintiff Eppley in this matter. I would probably request a similar amount of time if I need that much time. Okay. And I'll tell you that the microphone that's in front of you is for recording only. And so if you keep your voices up so we can all hear you. And Ms. O'Brien Daly, if you'd like to proceed? Yes, thank you, Your Honor. All right. Please have a seat, Mr. Silverman. Good morning. And may it please the Court? This is our appeal, Your Honors, from a certified question under Supreme Court Rule 308. And the question before the Court is, in a case where a plaintiff has sued a nursing home under the Wrongful Death Act, alleging that the defendant failed to provide proper nursing and medical care and treatment to her decedent, so as to prevent a fall, injury, and death, is plaintiff required to file a report in compliance with Section 2622A1 to support her claim? So go ahead. I'd like to go back one step. Yes, sir. While we're here, I know that the vote of the panel, which was not us, was two to one to hear this case. But in reading the briefs submitted on that issue of the 308, I'm not clear on how taking this case materially advances the termination of this litigation, because you're still going to go to trial on Count 1. So how is this going to change anything? Well, Your Honor, you're correct. We would still go to trial on Count 1 as the case is positioned right now. However, Count 1 is merely a claim for neglect under the Nursing Home Care Act. If Count 2 does not proceed, then it's going to significantly shorten the procedure. How so? How so? Well, if we prevail, Your Honor, there's going to be a medical malpractice case in addition to this case for neglect. There's going to be a lot more evidence. There will be expert testimony. And there's going to be an entirely different procedure in order to establish or for the plaintiff to be allowed to establish the wrongful death action, which will be a medical malpractice. But the allegations of negligence in Count 1 are incorporated in their entirety in Count 2, right? Well, I agree that the allegations of Count 1 are incorporated in Count 2 in their entirety. So same witnesses are going to testify to those allegations of negligence, right? Well, there will be additional witnesses, Your Honor, on Count 2, the wrongful death act claim, because that claim sounds in healing art malpractice. That's where you're losing me, because if Count 1 is strictly a claim under the Nursing Home Care Act and the only reason the plaintiff brings Count 2 for wrongful death is that the decedent died as a result of the negligence alleged under the Nursing Home Care Act, how does that become a med mal case? It becomes a med mal case, Your Honor, because under the Nursing Home Care Act, the plaintiff merely has to prove neglect under the act. Because of the assertion that you're losing me there. So, I'm going to say, just to state one point, because Count 2 is not under the Nursing Home Act. That's correct. Completely separate. So don't talk about the Nursing Home Act when you talk about Count 2. So why would you talk about the Nursing Home Act when you talk about Count 2? The only reason I mentioned it, Your Honor, was to distinguish the two counts. Yes, I agree. It's distinguishable. So this is ordinary negligence, right? Right? Isn't that what it's claiming to be? Count. Ordinary negligence? Neither one of these counts is ordinary negligence, Your Honor. What is Count 2? Count 2 is healing art malpractice. No, no, no. Where does it say healing art malpractice? Anywhere in the complaint. Anywhere. Tell me. Are those words anywhere in the complaint? Those words aren't, Your Honor. The allegations are of healing art malpractice. Well, that's an interpretation of the facts of the complaint. We don't need to be here to decide whether the complaint, I mean, the judge already made a decision, right? Against you. Yes. So we don't need to make that decision. The court has already done that. And how would it advance this case by our hearing your arguments? Our position, Your Honor, is that the trial court made the incorrect decision. The trial court denied our 2619 motion to dismiss, and it should have been granted. The basis of our motion to dismiss was the failure of the court. Because the judge has to interpret the complaint. What does this complaint talk about? You say it's healing art. They say it's ordinary negligence. So what's the difference of opinion? There's no legal issue here. We're supposed to look at a legal issue, right? What's the legal issue? The legal issue, Your Honor, is whether or not the claim here sounds in medical malpractice. That's an issue of fact. The judge looked at the allegations of negligence in count two and said this is not healing art malpractice. Therefore, the plaintiff does not need an affidavit. That's a determination of fact. It's not a determination of law, is it? Respectfully, Your Honor, the issue here is a question of law because if you look at the allegations, the plaintiff is alleging that manor care deviated from the standard of care of a nursing home because it failed to make a proper assessment and evaluation, a medical judgment, as to — You're saying what the plaintiff means by failing to make an adequate assessment is a medical judgment. That's a conclusion that the trial court resolved against you. She said, I don't see that in the complaint. Actually, I'm sorry. Excuse me. I thought that the complaint wasn't that they didn't properly evaluate the decedent, but that they didn't properly care for him after that evaluation. They knew he was on drugs. They knew he had dementia. They knew he had balance issues and fall issues, and they didn't then protect him. So the medical decision, this guy needs protection, had already been made, and the only thing that was left was they didn't do what they were supposed to do. How is that medical malpractice and that negligence? What the complaint alleges, Your Honor, is that they didn't make the proper evaluation and assessment, and then from there, as you mentioned, did not implement the appropriate supervision, fall precautions, and restraints. Okay. They did make the proper evaluation, but they didn't implement the procedures needed to protect him. Yes. So how is that negligence? Well, they didn't take into account, according to the complaint, this man's dementia, history of falls, and muscle weakness, and didn't implement the appropriate supervision, fall precautions, and restraints. I want to make sure we're talking about the same thing. They knew about all these problems. They just didn't do anything about them. Well, they knew or should have known, is how it's alleged, Your Honor. And then from there, the pleading says they didn't do anything about them. So there, too, they're alleging that the nursing home knew about this stuff, but failed to take proactive measures to prevent danger to him. That, to me, would be negligence, not medical or healing or malpractice. Well, Your Honor, if you look at the Klonowski case, the Taylor case, and the Gingold cases, which are all cited in our briefs, when you have that sort of a factual scenario, those plaintiffs were in the hospital, right? Yes. So as part of the treatment in the hospital, the doctor taking care of them said put bed rails on or make sure they're strapped into a wheelchair or whatever. I mean, that's all part of the medical care and treatment of a patient in the hospital. Right. And it would also be the medical care and treatment of Mr. Oksotchoski in manor care. In fact, if you look at the Nursing Home Care Act, and I'm sorry to refer to it, but even the Nursing Home Care Act says that the decision to restrain a patient, and that includes putting bed rails on the bed, is something that must be decided by a physician. That's not something that's... Where is the word restraint in the complaint? Is the word restraint, restrain, in the complaint? Yes or no? Yes or no? Not those specific words, Your Honor. So it's really a different situation that's been played. Is it your position that any time a patient is in a nursing home and is injured, it's a result of a healing malpractice? No. Okay. That isn't our position. So in order to make a determination, so what you're asking, or what was asked of the court below was to make a determination, right? Yes. And on one side is a healing malpractice. Yes. And on the other side is ordinary negligence, right? Yes. Okay. So that's a continuum. You know, where is it? That's facts, right? Where is that a legal issue on how the judge comes down where on that continuum this complaint falls? I'm having trouble getting there. Because you agree now, ordinary negligence can be pled. People fall in nursing homes probably more frequently than any other type of injury. And there's the healing malpractice. Okay. So you're saying it's way over here. They said it's over here. And the judge said, agreed with the plaintiff. Yes. What's there for us to decide? Well, if you look at the pleading, Your Honor, for example, if this were a slip and fall, if Mr. Ositowski slipped on a puddle of water and the complaint alleged that the nursing home was negligent in failing to clean up the puddle of water, that would obviously be an ordinary negligence claim. Here the allegation And if they let him get up to walk to the bathroom unassisted, it's a med mal claim? It is when you consider the allegations that are made here, which are that the nursing home did not implement the necessary supervision based upon his medical condition, did not implement the appropriate fall precautions based on his medical condition, and did not implement the bed rails, which under the case law are restraints, based upon his medical condition. And on the face of the complaint, as a matter of law, this complaint alleges healing art malpractice. It's a med mal case. Again, that's a factual determination. Again, we can't take a case under 308 that's simply factual. Well, I would appoint the court to the Williams v. case, which is a very recent case, which came up under similar circumstances from Judge Johnson, and I know that Justice Mason was on the panel that decided that case. It was the same type of situation. If you look at the face of the complaint and it can't be interpreted in any other way than as a healing art malpractice case, then it's a question of law as to whether or not the Healing Art Malpractice Act applies. Okay. So but we're dealing with a case here where, as Justice Hyman said, at one end is ordinary negligence, at the other end is healing art malpractice, and there's a lot in between. And the trial judge, as a matter of fact, said, I look at this complaint, I see ordinary negligence, the plaintiff doesn't need an affidavit. I'm having a hard time seeing the issue of law that justifies an interlocutory appeal. Your Honor, I think the argument below was that because there's a Nursing Home Care Act claim combined with this Wrongful Death Act claim, that the exception of EADS ought to apply to both of them. And the reasoning... It should have tied up the exception. Under the Illinois Supreme Court case in EADS, EADS said that the Healing Art Malpractice case doesn't apply to Nursing Home Care Act cases. Right. And there's a distinction here between Count 1, which is pled under the Nursing Home Care Act, and Count 2, which is pled under the Wrongful Death Act. And the exception in EADS does not apply to the Wrongful Death Act claim. And so I think that the trial court was hung up on the combination of the two. I don't know. I don't know about that. But every wrongful death case then involves a 622 affidavit. Is that what you're saying? Absolutely not. No, Your Honor. So again, we're on this continuum. You know, we get back to how you interpret this complaint. And you just have a different way of interpreting the complaint. In this case, are we looking at a standard of care by the nursing home? That's the way the complaint is alleged, Your Honor. Right. And so we're supposed to look at how the – it's their complaint. They're the master of their complaint. And if they made it a standard of care, not a – I don't know. Again, they don't talk about medical, anything medical. The fact that he had conditions, I mean, somebody who slips and falls on water could have diabetes and dementia and all that. It's pretty irrelevant, isn't it, to the fact that this man fell? Well, if the sole allegation was that he slipped on the water because someone was negligent in failing to clean it up, then I would agree with Your Honor that that would not necessarily be a medical malpractice case. How about poorly trained staff? Would that be a negligence case? Or would I have to have an affidavit for that? The staff at the nursing home was poorly trained to handle people who are in a condition where they might fall. Well, if it didn't involve a medical judgment, Your Honor, and it was just a general allegation. It's an allegation that the staff is poorly trained to handle people who have dementia and may be walking around and have problems with their legs. Well, if you add in the facts about dementia and walking around with weakness and whatnot, yes, I would say that that would fall within the healing art malpractice. But, of course, anybody in a nursing home has a medical condition, right? So you're losing me. It's okay with a medical condition if they slip and fall on water, but if it's training of the staff, somehow that's medical healing art? Well, if the allegation also alleged that the staff didn't make a proper assessment  of the medical condition, then that would bring it within the realm of healing art malpractice under the case law. What? What case? Well, I would point, Your Honor, to the Kolosowski case. I thought you said this was an issue of first impression. I do think it is, Your Honor, although there are cases that address situations with almost identical facts in hospitals. That's a hospital context where someone is being treated for a medical condition, and incident to that treatment, they say, put on bed rails, do all this other stuff. It's like saying take the meds every four hours. The doctor says this is what you should do. When staff, medical staff, doesn't do that, of course that's healing art malpractice. But when you're in a nursing home, it's different. I don't believe it is, Your Honor. And also I would direct your attention to the Kolosowski case. Although the hospital was involved in the care there, the plaintiff was only in respite care. He wasn't being treated for any medical ailment at the time. And the court there found that healing art malpractice was alleged, even though he was there for a short time, because the hospital, just like the nursing home, still had the alleged duty to evaluate him for the risk of falling. And if he did have a risk, they had the duty to supervise him and implement fall precautions based upon his medical. The negligence under the Nursing Home Care Act is the failure to adequately evaluate him for the risk of falling, given his dementia and his psychotropic drugs. And they don't need a doctor's affidavit for that. The same assessment, the failure to assess his condition, his dementia, his psychotropic drug consumption, becomes healing art malpractice solely because he died as a result of the fall. No, Your Honor, it's healing art malpractice any way you look at it. It's just that there's an exception under 2622 for the Nursing Home Care Act claim. But also, not every nursing home fall needs a 622 affidavit, correct? You've agreed to that. Well, most of them wouldn't, Your Honor, if they're alleged under the Nursing Home Care Act. No, no, no, no. You can have a separate count for wrongful death, right? Yes. And they did. So that's why, you know, again, I don't – that's a separate count. We're only looking at a negligent count here. And again, you keep saying, well, even in your brief, you say it's clear, it's all this. If it was so clear, then the judge, you know, it wouldn't be here. Apparently, you wouldn't have asked us if it was so clear. So it's not so clear, but it is a judgment call. And again, that judgment call is based upon not what you drafted, but what the plaintiff drafted in their complaint. And it seemed that this couldn't have anything to do with a doctor, with medical care itself, but with personal care. And personal care has been found to be different. And if you look at the definition of personal care and healing practice, they're different definitions and say different things. Well, that's true, Your Honor. And the plaintiff's complaint does refer to personal care. But I submit that what's being relished here doesn't fall within the definition of personal care under the Act. Okay. It goes much further than that. Personal care deals with general supervision and oversight. What's being alleged here is that they didn't look at this patient for his very particular medical condition, and they didn't provide the assistance that was required by his medical condition. And that, Your Honor, was a medical judgment. But where in the complaint does it say that? Where's the allegation to say that the medical judgment is involved? Well, it says at the supplemental record on page C6 that Mannequin knew of the decedent's medical history of dementia, falls, and muscle weakness. And then at page 7. So that's just the fact of his condition. Yes. So that's not a medical issue. Well, and then if you look, Your Honor, at the supplemental record pages 8 through 10, this is the First Amendment complaint. Yes. Mannequin had a duty to implement supervision, fall precautions, side rails on the decedent's bed to prevent him from falling and sustaining injury. So that allegation goes directly to the condition of the patient. And the plaintiff's complaint alleges that the nursing home should have taken into account his medical condition. No, it doesn't say that. That's where you're reading something. Policies and procedures have to do with standard of care. And in order for them to win their case, they have to show that you did not abide by the standard of care for negligence, right? Correct. Okay. So I don't see the word medical condition or medical or is conditioning. It says policies and procedures. Policies and procedures. Policies and procedures. Well, it also does say at page 7 that the manor care administered psychotropic medication to treat his medical condition. Which subparagraph is that? That I'd have to take a closer look at. Well, there it is. He failed to sufficiently to have sufficient nursing and related services for the patient to attain and maintain the highest practical physical, mental and mental health. Well, I was looking at paragraph 38 for the psychotropic medication. Which that's on page seven, which is 38 is page five. Right. Page five of the complaint and page seven of the record. So the implication is that he was receiving the medications to treat his medical condition, Your Honor. So if he fell on water, I think it says the same thing. If the allegation was. Or he received medications. Again, is the question here having to do with the medications he received? That's part of it, Your Honor. It is? Because that's a fact. In all relevant times he received medication. That's not the claim. The guts of the claim is paragraph 60. Paragraph what, Your Honor? 60. 60? Mm-hmm. Is that the standard of care paragraph? Which is duties and was negligent in one or more of the following ways? This is just stating a fact. Yes. The fact is he was on medication. Right. Okay. So we're not complaining about the medication. Nowhere do they say that they complain about the medication. Well, I think what the complaint, if you read the complaint as a whole, what they're saying is that the nursing home didn't consider all of these medical conditions and then in paragraph 60 they breached their duty in failing to respond to those medical conditions by implementing a care plan to not allowing him to get out of bed unassisted. They should have used an alarm. They should have put side rails on his bed. They should have used fall precautions, all in response to his medical condition, which was dementia, taking psychotropic medications, muscle weakness, prior falls. And then if you look at paragraph 62, and that's on page 8 of the complaint and page 10 of the record, that's where it's alleged that as a direct and proximate result of one or more of the alleged acts, the manner of care allegedly deviated from the standard of care of a reasonable nursing home. Yeah, but that's in paragraph 61? 62, Your Honor. 62, which is not part of count 2. Count 2 incorporates all of these facts. No, it doesn't. That's alleged. All the facts, yes. But read paragraph 2 of count 2. It only incorporates paragraphs 2 through 60. Right, and I made a mistake, Your Honor. Actually, if you would look at page 9 of the complaint or page 11 of the record, that paragraph 62 is repeated there within count 2. Okay. It's the standard of care. It's deviated from the standard of care of a reasonable nursing home. That's a claim that has nothing to do with medication. I mean, malpractice standard of care. Right. There are many cases against nursing homes about the standard of care. Well, I would submit that deviation from the standard of care, that that is a medical malpractice claim. That's the traditional way that a medical malpractice claim is alleged. The witness who is going to testify to the deviation from the standard of care based on these allegations is a nursing home administrator. It's somebody who's familiar with how nursing homes handle residents in their facilities. It's not going to be a doctor. It's not going to be a medical professional. It's not a medical judgment. I disagree, Your Honor. I think that the case law says that the witness that needs to testify to whether or not there was a deviation from the standard of care under these circumstances where the allegation is a fall risk, that that has to be a nurse or a physician. A nursing home administrator would not be qualified to make that medical judgment. You're saying whether someone is a fall risk is a medical judgment. Nobody disputes that. He came in here as a known fall risk. And the question is, what does a reasonable nursing home do with a resident who is at risk of falling? It's a nursing home administrator. It's not a doctor. If the plaintiff had alleged that the psychotropic medications had been not given or wrongly given or given at the wrong times or overdosed or underdosed or whatever, we'd be having a different discussion right now. But they didn't allege that. So if everything about this patient was known to manicure from the minute he walked in, he's fragile, he's got fall risk, he's got dementia, he needs this medication. Those decisions have been made. Those diagnoses have been made. Here's what you get when you walk in here. Here are the papers that you got when you walked in. Now, nursing home, protect him. Take care of him. How is anything medical involved in that that isn't alleged? Well, first of all, Your Honor, if he came in with a prescription for psychotropic medications, a doctor had already prescribed those medications, if their allegation was that the nursing home Well, hopefully because they can't be doing it on their own. That's correct. Right. But if the allegation was that the nursing home failed to give him the medications that were already prescribed. Their allegation doesn't have anything to do with failure to properly administer the medication. Right. So how can it be medical malpractice? Well, that would be ordinary negligence, Your Honor, because they were just failing to follow the instructions of the physician. But here, he didn't come in, according to the complaint, he didn't come in already evaluated as a known fall risk. That's part of what their alleged manner of care did wrong. The plaintiffs are alleging that manner of care failed to evaluate this man as a fall risk. They failed to respond to that evaluation by implementing the proper precautions. That is what the medical judgment is. Let's go to the bottom line. Yes. Let's say that you win, so he has a file certificate, right? Yes. Right. So why can't he just do that when he goes back to the court alone? If he wasn't dismissed, you know, right now, I mean, it doesn't sound any good prejudice. So, again, you know, where are we going? Well, he wasn't, the plaintiff wasn't able to do that, Your Honor. If it comes back down and he is able, then that might solve the problem. Well, he doesn't have to do it. I mean, that's what the ruling right now is you don't have to do it. That's the ruling right now, and that's why we're up here asking for it. Right. Exactly. But what I'm saying is that the case law says that it's not with prejudice, where are we with prejudice, depending on the circumstances. So the court could allow him to do that. And, again, you know, we didn't advance this case when I owed it. Well, if the plaintiff is able to find a medical professional that can provide the affidavit, then that might solve the problem. Right now, they don't have to. So that's why they didn't. There's nothing that says they have to. There's no case law that says, you're saying there's no case law that says one way or the other. Well, no, that's not correct, Your Honor. So they shouldn't follow the case law? That's a clear question. Well, I think that, yes, the actual factual scenario of this case is a question of first impression, but it's so close to the Kolomowski, the Taylor, and the Giegel cases that the court should make the decision here that the 2622 affidavit is required because the plaintiffs have alleged a healing art malpractice case. Anything else? Anything else? Do you want to wrap up, Ms. O'Brien-Dailey? Yes. Thank you, Your Honor. For all of these reasons, we respectfully request that this court answer the certified question in the affirmative. Thank you. Mr. Silverman. Thank you to this panel. As much as I would like to speak to this panel about this case, there's really nothing for me to address. This case should not be here. This does not materially advance this case. That was my argument to the trial court, but in the judge's decision, she granted 308 certification. As this panel pointed out, I disagree with counsel. If anything, we would have less work to do. I wouldn't have to have an expert medical examiner to testify in this case if there was no wrongful death claim. So actually, this would shorten the case, not extend it. But we'd have the exact same witnesses who would testify. That's just the first point. With regards to the points that this panel brought up, there is nothing about this case that is a medical malpractice case. Zero. When a question is certified under Rule 308, our jurisdiction is limited to answering exactly the question of law, if it is a question of law that the trial court has certified. And your statement of the issue presented for review on page 2 of your brief is different from the question that was certified by the trial court. And we can't rephrase the question. We can't answer a different question. So we're really limited to the questions certified by the trial court.  And we're limited to the question of whether it's a question of law or not. But that said, is it an issue of law? No. Not at all. Okay. The question presented, is that the question? I didn't go back and check whether that's the exact question that was raised by the defendants or did the judge come up with this? Defendants. Defendants. Since the judge is finding this is a medical case, on the one hand, it talks about medical care in the question. Oh, yes. Thank you for pointing that out. The judge did not say this is a medical case. But it says here that 11 of the defendants failed to provide proper nursing and medical care in treatment to her. That is an incorrect statement, Your Honor. Incorrect. But that is the question, right? It is the question. But you're saying that that was drafted by the court adopted the draft of the defendant. Apparently so. Unfortunately, that sometimes slips through the cracks, so to speak. I'd have to look at the exact order to see the language. I know it was a little bit small with cursive writing. But the court, in fact, did not ever say that this was a medical case. And obviously the court ruled that way because they said A62 was not needed. Anyway, I'm looking at the handwritten order from Judge Casa. And she does say to provide proper nursing and medical care in treatment to her descendant. I don't see it. It may be. I would stand corrected to the panel and judge ruled that there was no 62 needed in this case. This is not a medical malpractice case or claim. How would you suggest the court? Would it be helpful if the court did take the case? Because it would, once and for all, make a determination whether in a negligence case, a 622 affidavit is necessary, since that question apparently is open. Some people file it. This is a belt and suspenders type thing. And some don't. But right now it's an open issue. I would agree that it would be a helpful issue. I handle a majority of the nursing home abuse and neglect cases at my firm. And I would say in probably 90% of the cases that I file, the defendants file a motion to dismiss because I don't have a 622 attached. I've stopped attaching 622s. As you saw, originally I did file a 622 because there was no clear specific case, even though I think EADS. But you filed a 622 to address the proximate cause between the hip fracture and his death. Not medical malpractice. And that's, you know, you're going to have to have somebody establish that at trial no matter what. But the question is, in a case, it's really more of the issue that you raise, where you have nursing home residents who are injured and ultimately die through negligent conduct at the nursing home. Not by a doctor or a nurse. Just they fall and hurt themselves and die. Do you have to have a 622 affidavit? And I, you know, maybe you'd like that question answered. But the question is, is this the case to do it? Because it seems to me the trial court decided that your complaint alleged ordinary negligence and so you didn't need a 622 affidavit. Yeah. I can't, you know, give my wisdom to this panel. This panel is much more wise than I am if this is the case. I think it's a pretty straightforward issue. And I don't mean to simplify it because I'm here before the appellate court on an issue that, to this day, I'm still scratching my head. I don't understand, as Justice Hyman brought up, I don't see how this is any different than a slip and fall on a wet floor or a car accident case where the person sustains an injury and then dies. There's no difference. I have clients who I represent who are on various medications, who have fallen, who've had this, who've had that, just like Mr. Olczykowski. And they slip and fall at Northwestern. It's not a medical malpractice case. There's no part of it that's a medical malpractice case. That's the facts of the case. That is the person. It's the place. That's the place. It's not a medical malpractice. And I don't know why this has become such a head-scratcher, you know, with all due respect to the defendants and the other ones I face. There's no allegation in the complaint for medical malpractice, so I don't understand why I continually face these motions to dismiss, yet I do. And I brief it each time, and I basically use the exact same brief, as embarrassing as it is to say, to respond because it's the same facts every time. And evidently the majority of judges that handle these matters agree with you. Yes. You don't need a 622 affidavit. I have – that's exactly why I have stopped doing 622s because I've now been before almost every judge. I know there's some high turnover on the 22nd floor at the Davies Center. I don't know of a judge now that requires one. So we're going to continually do this, and the judge is, I think, going to rule, and then hopefully eventually it will stop. If it doesn't stop, I wish there was some penalty that can be imposed for it because it's a waste of the judicial time and it's a waste of my time and defendants' time. But, you know, unfortunately they get the bill for their time and I don't. But that's not the issue. At some point it needs to stop. Is this the case that makes it stop? That's up to this panel. But I think if there is a clear case that says, when there are no allegations of medical malpractice at all in a complaint, it's not a medical malpractice case. But it's a question, though, you have to read the complaint. Yes. I mean, every complaint is a little different, and even if you don't use those words, I mean, Constance Parkman is, you don't need, there's no magic words. It's the whole complaint. It's an interpretation complaint. So every case is a little different, and the judges look at the complaint, and if they say it's ordinary negligence, then you don't need the 6-2-2. And if they say, no, this one is a malpractice case and a healing act, then you do. I mean, it's one of those issues that's so factually evident, yeah. I mean, hypothetically, you could have cases where it's nursing care malpractice, and you have to have an expert nurse say the nurse's failure to call the attending physician when the, you know, defendant or the decedent's vitals were at such a level was below the standard of care for a reasonable nurse. And, you know, if you're in a nursing home, it doesn't mean you don't need a 6-2-2. You need a 6-2-2 no matter where you were, right? So it really depends on the allegations of the complaint. That is an absolute true statement. Okay. Anything else? All right. Thank you for this panel. It's time. Thank you. Thank you, Your Honor. Just very briefly, as the court recognized and as counsel admits, he is going to need expert testimony in order to establish his claim. Albeit, he's only admitting that he needs it to establish proximate cause.  I believe that's not the case. I believe it brings the case into the healing arts malpractice realm. Oh, never. Never. To have a proximate relationship between an injury and a death, that's proximate cause. That doesn't turn it into a med mal case. Well, it's our position. We have doctors who testify in wrongful death cases every day, and they're not med mal cases. Sure, Your Honor. But it's our position that they also need expert testimony in order to establish what the standard of care is here and also to establish a breach of the standard of care. And under the Jackson case, that's one of the considerations that this court takes into account when determining whether or not there is a medical malpractice case or healing art malpractice case alleged. And finally, I just wanted to comment on one of counsel's statements. He said that you're taking into account the facts of the individual person. And that's exactly our point, Your Honor. What the plaintiff has alleged here is that the nursing home did not take into account the medical condition that this individual person came to the nursing home with. They did not use proper medical judgment. And that allegation is one of medical negligence, healing art malpractice. The Section 2622 affidavit was required. Thank you. Thank you both for your arguments this morning, for your briefs. They were excellent, a very interesting issue. And we will take the matter under advisement.